THE subject of controversy in these causes, between James Burnsides, and Andrew Reid, on behalf of Samuel Culbertson, was four hundred acres of land, called Culbertsons bottom,. clamed in right of settlement, with six hundred acres of the land adjacent, clamed in right of preemption.
Andrew Culbertson had made a settlement on the land called *151 his bottom, in 1.753 ; left it through fear of theindians ; and afterwards sold it to Samuel Culbertson.
During several years afterwards, that part of the country was infested by the enemy, so that the place appeared to be deserted by the Culbertsons, although they seem to have done every thing, which they could do safely, to prevent the belief of an intended dereliction.
Their removal however having been to a great distance, before Samuel Culbertson could assert his title conveniently, other men clamed the land which had been settled, all whose pretensions at length concentered in Thomas Farley or Farlow, who paid for it the purchase money demanded by some men, called the loyal company, to whom the governor in council had granted leave to appropriate an enormous territory, including within its limits, if it can be said to have limits, this parcel.
In march, 1775, Thomas Farley procured the land, which he had thus bought, being 355 acres, to be surveyed, and took a certificate thereof, in order to obtain a grant so s<~on as the land office, then occluded, should be opened ; and assigned his right to James Burnsides.
In may, 1779, Samuel Culbertson, by letter of attorney, irnpowered Andrew Reid to demand, and institute process for recovering, possession of the land.
In 1782, the controversy was exhibited before the court of commissioners, a tribunal, constituted by statute in 1779, for deciding cases between litigant settlers, by their sentence the right of James Burnsides to four hundred acres of laud, including the three hundred and fifty five, which had been surveyed for Thomas Farley, in right of settlement, and to six hundred acres adjacent, in right of preemption, was sustained.
Andrew Reid, having entered a caveat against emanation of a grant to James Burnsides, which otherwise would have passed the seal, upon a certificate of the adjudication by the commissioners, presented a petition to the general court, stating that unavoidable accidents had disabled him to produce before the commissioners, at the time of their session, testimony, which otherwise he could have produced, sufficient to support his dame, and praying the same to be considered, the general court allowed a hearing, and thereupon, the 12 day of October, 1784, reversed the adjudication of the commissioners, and awarded that a grant should issue to Samuel Culbertson for the lands clamed both by settlement and preemption.
To obtain an injunction for staying execution of this judgement of the general court, on certain grounds stated in the bill, and to compel the defendent Thomas Walker, an agent for the *152 loyal company, to yield his consent to a grant to James Bum-sides of the land clamed by him, were the objects of the suit, in which he was plaintiff, an injunction, until further order, was granted, in may, 1785.. the grounds stated in the bill were, 1, that the right of Culbertson, which originated in a settlement, a species of right never adopted for legitime before 1779, was, by the statute of that year, postponed to every other right therein recognized, so that the right of Thnmas Parley now derived to James Burnsides, which was by survey, and established by that act, although the survey were posterior to the settlement, must be superior to the right by settlement, and therefore ought to prevale against it. (a) 2, that the decree, as it is called, of the court of appeals, the 2 day of may, 1783, on the clames of Thomas Walker and Thomas Nelson, some way or other, determined the question in this case in favour of James Burnsides, (b) 3, that James Burnsides had the right even of Andrew Culbertson by purchase from, one to whom, it had been transferee!, before the pretended sale to Samuel Culbertson. (c)
Before the defendents in that suit had answered the bill, James Burnsides, having, in january, 1786, procured to be made a survey of 1200 acres of land, including the lands in controversy, and a certificate thereof, surreptitiously obtained a grant to himself of the said lands, of which grant a repeal is the object of the other suit, commenced against him by Andrew Reid.
On hearing these causes together the 15 day of may, 1792, the opinion and decree of the high court of chancery were pronounced in these terms:
‘ The court is of opinion that James Burnsides, after obtaining an injunction to stay execution of a judgement by the general court against him, having procured a survey to be made, and a grant to himself to pass the seal, of land, to which "land the title of Samuel Culbertson was asserted by that judgement, and which according to the judgement Avould have been secured to him by a grant, if James Burnsides had not. prevented it, was guilty of a fraud, because the register of the land office, if he had known such a judgement to have been rendered, by which he was ordered to issue a grant of that land to the said *153 Samuel Culbertson, ought, not to have issued, and therefore probably would uot have issued, the grant to Burnsides, and the court is also of opinion that Andrew Reid, on whom the right of Samuel Culbertson hath devolved, is not barred of relief against James Burnsides, by the decree and order of the court of appeals, on hearing the clames of Thomas Walker and Thomas Nelson, not only because a clame under the survey for Tilomas Fallow, which James Burnsides in his bill suggests to he the foundation of his title, doth not appear to have been established by the decree and order of the court of appeals, and could not be legaly established, so as to bind the right of any who were not parties in that preceding but, because the grant to James Burnsides was founded, not on that survey, but on a survey certified to have been made for himself, in january, 1786, by virtue partly of an entry, on a certificate from the commissioners for the district of Washington and Montgomery counties, for 400 acres, dated the 10 of September, 1782, which certificate of the commissioners, with their adjudication affirming the right of James Burnsides, was annulled by the general courts judgement aforementioned, and now the court would have pronounced such a decree as in its opinion, if what followeth had not happened, ought to be made — a decree nearly like that which was pronounced in the case between James Maze, plaintiff, and Andrew Hamilton and William Hamilton, defend en Is ; but. that decree hath been reversed by the court of appeals ; and this court, from that reversal, supposeth, perhaps erroneously, the opinion of that honorable court to have been, that, by the order of council, granting leave to the greenbrier company to take up ÍÜÜ000 acres of land, lying oi. Greenbrier river, northwest and west of the Cowpasture and Newfoundland, all lands within those limits, if they must be called limits, were appropriated, so that the company or their agent had power to survey and sell any parcel, which they should chuse, of such laud, although another man had settled on the parcel before the surveying and selling, and although the act of general assembly, passed in the year 1779, had declared to be just, that, those who had settled on the western waters, upon waste and unappropriated lauds, for which they nad by several causes been prevented from suing out grants, under such circumstances, should have some reasonable allowance for the charge and risque they had incurred, and that the property so acquired should be secured to them ; the honorable court seeming to have understood that, by the terms waste and unappropriated lands, ta which no other person hath any legal right or dame, the act intended lauds which the company had not chosen to survey, at *154 tér, as well as before, they had been settled ; whereas some, who have observed that the surveys made by orders of council and confirmed by the act are surveys of waste and unappropriated lands likewise, think the application of the term, unappropriated, in the case of lands surveyed by orders of council, to lands not settled before the surveys, would be found criticism ; especially the act having dignified the settlement with the emphatical appellation of property, property acquired, and acquired at charge and risque, means of acquirement generaly esteemed meritorious ; and think the words land*, to winch no other person hath any legal right or clame, more restrictive than the words lands unappropriated,, which comprehend lands to which no ether person hath any right or clame, whether legal or equitable ; and the honorable court seeming to have understood that the act, by the terms upo i lands surveyed for sundry companies, Spc., people have settled, 6pc., in the seventh section, desigued to include lands surveyed as well after, as before, the settlements ; whereas some commentators conceive that the interpretation, which confineth the words to surveys prior to the settlement, is not inconsistent with the rules of giammar, with the intention of the legislature, or with the principles of natural justice, and this court supposeth the opinion of the honorable court to have been, that where a settler of land, surveyed after his settlement by virtue <>f the companys order of council, had obtained a grant of the land, including an additional quantity in right of preemption, one, who was a prior settler, recovering the settlement from the grantee on that principle, shall not recover with it the preemption land; whereas others think that he, who recovereth in right of priority, ought to be in the condition in which he would have lx,en, and consequently ought to have the preemption, to which he would have been intitlei, if the posterior settler had not obtained the grant, and i his court also supposeth the rights of the loyal company, under whom James Burnsides in the principal case clameth, and the territorial limits of whose order of council are not more defiuiie than those of the other company, to be no less extensive, and not less to be prefered to the rights of settlers, than the rights of that other company ; on these suppositions, this court, in order to such a final decree as at this time is believed to be congruous with the sentiments of the court of appeals, doth direct (d) that a survey be made of the 400 acres of land, for the settlement by Andrew Culbertson, which may be laid down as either party shall desire, to enable the court to decide between *155 them on the propriety or reasonableness of the location; that the paleut of James Burnsides be also surveyed and laid down, to shew how much it includetb of the 400 acres ; and when this shall be adjusted, the court doth adjudge order and decree that James Burnsides do convey to Andrew Reid the inheritance of so much of the 400 a^res as shall be found to lie withiu the bounds of the said patent, with warranty against himself, and all claming under him, and deliver possession thereof, upon Andrew Reids paying to him, at the rate of three pounds per hundred acres, for the quantity so to be conveyed, that, as to those 400 acres the bill of James Burnsides be dismissed ; andy as to the residue of the land contained in the patent, that the-bill of Andrew Reid be dismissed ; but Andrew Reid is nevertheless to be at liberty to procede to survey the 600 acres of laud for his preemption, if he can find land to satisfy the same* without interfering with the said patent, or any other prior clame.’
From this decree both parties appealed, each from so much of it as partialy dismissed his bill.
On the 19 day of november, 1794, the court of appeals pronounced their opinion and decree iu these terms :*
‘ The court, having maturely considered the transcript of the record and the arguments of the counsil, is of opinion, that the said decree is erroneous in this, that, after setting aside Burn-sides patent, for fraud, so far as it c >mprehended the lands adjudged by the general court, in 1784, to Samuel Culbertson for his settlement right, it makes the preemption clame of the said Culbertson, founded on the said judgement, yield to the pa tent of the said Burnsides, which was not obtained till 1786; which patent appears to have been obtained upon a survey made in 1786 ; and herein this case differs from the case of Maze against Hamilton, because that survey was made under the greenbrier company m 1775 : † therefore it is decreed and ordered, that the said decree be reversed (e) and annulled, and that the said James pay to the appellees, in the first suit., and to the appellant, in the second, their costs by them in this behalf expended. and this court, preceding to make such decree as *156 the said high court of chancery should have pronounced, it is further decreed aud ordered that a survey be made of 400 acres of land, for Culbertsons settlement, and 600 acres adjoining, •which may be laid down as either party may require, to enable the court of chancery to determine as to the reasonableness of the location; that the patent to James Burnsides be also surveyed and laid down, to shew how much it includeth of the 1000 acres, and, when this shall be adjusted, that the said James Burnsides he decreed to c nvey to the said Andrew Reid the inheritance of so much of the 10Ó0 acres as shall be found to lie within the bounds of the said patent, with warranty against himself and all claming under him, and deliver possession, upon his paying to the said Burnsides, at the rate of three pounds per hundred acres, for- the quantity so to be conveyed; that as to those thousand acres the bill of the said Burnsides he dismissed ; and, as to the residue of the lands contained within his patent, that the bill of the said Reid be dismissed, and that the said Burnsides pay to the other parties their costs in each suit in the high court of chancery.’
REMARKS.
The decree is admitted to be erroneous, by him who delivered it, and who declared, at the time, that it did not accord with his own opinion, hut that it was congruous, as he believed, with the sentiments of the court of appeals, he was mistaken, but, perhaps, to avoid such a mistake will not seem easy to one who peruseth the reversing decree, and endeavonreth to connect the conclusion, begining at the word, therefore, with the premisses. (f)
The reversed decree is said to make the preemption clame of Culbertson yield to the patent of Burnsides, obtained not before 1786 ; but that decree is denied to contain such terms, or terms of such meaning.
This case is said to differ from the case of Maze and Hatniltons, because that survey was made under the greenbrier company in 1775.
Let us inquire whether this difference exists.
In 1775, Samuel Lewis, an agent of the greenbrier company, surveyed 1100 acres of land, including a place on which James Maze had settled more than ten years before ; whence the place derived the appellation Mazes cabbin.
In the certificate of survey a blank was left for the name of *157 him who should purchase from that company, both Hamilton and Maze had treated with the agent for a purchase, but, before any bargain with either, both of them exhibited their elatnes before the court of commissioners, who sustained that of Hamilton, this judgement, upon a caveat and petition by Maze, was reviewed and reversed by the general court, who awarded to him the settlement and preemption.
Hamilton, l- us defeated, and being denied by the general court an appeal from their senteuce, and being also denied a writ of error, for which he applied to the court of appeals, renewing the treaty with the agent, concludes a bargain, procures his name to be inserted in the blank left for it in the certificate of survey, and, bringing that certificate to the land ofirce, obtains a grant; the register not knowing the land, to which Mazes title had been asserted by the general court, to be included in the grant.
Maze brought a bill in equity to be relieved ag'iinst the grant; and, by the decree of this court, was reinstated in the condition in which he would have been, if Hamilton had not practised the fraud, lor which decree the reasons were st'ted at laige. it was rever-md by the court of appeals, decláring it in general terms to be erroneous, and directing another decree to be entered, whereby Maze was allowed to retain so much of the settlement as lielh on one side of a line, (g) said to have been made by agreement between Maze and one Tacket, to run from Waehubs spring ; and Hamilton was allowed to retain all the rest of the land, and consequently the preemption.
Whatever principles may have governed the court of appeals, in the formation of their decree, in the case between Maze and Hamiltons this appeareth certain, namely, that, according to their opinion, the preemption was attached to the right by survey, and not to the right by settlement: and, if so, the case of Reid and Burnsides, differs not, as is conceived, from the case of Maze and Hamilton, as the court of appeals say it doth in that particular.
For although the grant to James Burnsides was obtained upon the certificate of a survey performed in 1786, yet the identical plot of ground in controversy, Culbertsons bottom, included in that survey aud grant, had been surveyed in march, 1775, for1 Thomas Farley, who had purchased from the loyal company, and transfered his right to James Burnsides.
*158 If then to the right by survey, in 1775, was attached the preemption, in the case between Maze and Hamiltons, to the right by survey, in 1775, was attached the preemption, in this case j herein therefore the cases do not differ.
. But from a real difference between the cases, he, who knew the grounds of decishm in one of them, perhaps might have expected a decision in favour of James Burnsides in the other. The difference is this : the Hamiltons had not the greenbrier eompanys right to the survey, which includeth Mazes cabbin, -until after his right to it had been asserted by the sentence of the general court. But Thomas Farley, from whom James Burnsides derives his clame, had the loyal eompanys right to ’ the survey itself of Culbertsons bottom, long-before the right of Culbertson, represented by Reid, was asserted by the sentence of the general court.
Now the court of appeals, when they decided the case between Maze and Hamiltons, declared their opinion unanimously to be, that settlement gave no right to lands, in law or equity, before, the act of 1779, and was then to operate upon mere waste land, not to chfeat any clame of a citizen to lands under surreys by order of council, although the settlements were before the surveys — and when they decided the case between Williams and Tomlinson, plaintiffs, and Jones, defender) t, declared their opinion, without dissention, to be, and accordingly resolved, that a survey, by authority of even a military warrant located upon land, then in actual possession of settlers, should prevale over their right, and sanctify their expulsioxi.
Why then was the right of James Burnsides under a survey, which the loyal eompanys order of council authorized, defeated by Culbertsons settlexnent right? for that Culbertson derived any right from that company, by purchase or agreement, is not proved or even suggested.
That the decree now directed is the decree which, one part of it excepted, the high court of chancery ought to have pronounced, is admitted, for reasons stated in the decree of that court in the case between Maze and Hamiltons, and hereinafter mentioned, the exceptionable part is that wixereby the three pounds per hundred acres, which was the money demanded by the loyal company illegaly, as is believed, from prior settlers were decreed to be paid.
The high court of chancery would have pronounced the decree here approved, because the judgement of the general court, in such a case as this, was, by statute, declared to be definitive ; so that no appeal from it should be allowed, if nevertheless the court of appeals felt themselves at liberty to examine the *159 merits of such a case, and to alter the judgement in it, as they certainly did in the case between Maze and Hamiltons, this question might have occured which, perhaps, deserved attention, whether a judgement or decree against James Burnsides, who confessedly was a purchaser for valuable consideration, and who neither knew, nor is suggested to have known, any thing of Culbertsons tide, unless he be presumed to have known, it, because the place was called by that name, be consistent with precedents which can be FURNISHED in the court of appeals ?

 The climax of rights, here attributed to the statute, seems to have been fabricated by the companies of land mongers, who, not content with the extravagant license granted tu them by orders of council, perhaps as beneficial as if they had be. n boundless, wished to convert them into monopolies.

 See the case between Maze and Hamiltons, ante 51.

 The testimony in pruof of this purchase is incredible.

 Conformably with the decree entered by order of the court of appeals in the case between Maze and Hamdtons.

 [See 2 Wash. 43 —Ed.]

[† See the judgment of the Court of Appeals as to the claims of the Green-brier and Loyal Companies, which applies to surveys, properly qualified prior to 1776, and made by virtue of orders of 0/ unoil to ^aid companies. — Ed.}

 This naughty decree, as to the 4hl) aen s of land, is repeated almost literaly, altho it is said to be reversed intire'y, by the correcting de,cree. another example of a decree said to be rever-ed, that, is, intirely reversed, and yet agreeing in most parts of it with its corrector, occurieth in the case b tween Ross, plaintiff, and Pleasants and others, defendeuts.

 An example of this kind of argumentation may be seen in the cases between Bill and Braxton, plaintiffs, and Gregory, defendent, ante 73.

 From reports of the surveyor, directed to perform the decree of. the court of chancery entered in obedience to the decree of the court of appeals, Whether, this line will ever be found seems doubtful); and the researches for discovering the sprint, either perennial or temporary, seems to have been hitherto not more successful!.